BERRÍOS, PLAINTIFF AND APPELLANT, *v.* MUNICIPALITY OF
JUNCOS, DEFENDANT AND APPELLEE.

Appeal from the District Court of Humacao in an Action
for Damages.

No. 2544.—Decided July 20, 1922.

MUNICIPALITY—DISTRICT ATTORNEY.—It is not contrary to the spirit of the Act
of March 9, 1905, that a municipality be represented by the district attor-

ney in a civil action in the interest of the public and without the payment of fees.

ID.—BUILDINGS—DEMOLITION OF BUILDING.—If a house is in a ruinous condition the owner is bound to demolish it or to make the necessary repairs to avoid its collapsing, and if he does neither the municipal authorities may raze it at the owner's expense.

ID.—ID.—ID.—NOTICE TO OWNER.—The defendant municipality in this case, considering the ruinous condition of a certain house, agreed to allow the owner two months within which to repair or demolish it, on the condition that in case he should do neither the municipality would repair or demolish it at the owner's expense and risk. The owner was given notice, but did nothing. The two months having more than expired, the municipality demolished the house. *Held:* That the house being, as it was shown to be, a public nuisance, the municipality acted within its powers, notwithstanding the fact that at the time of the demolition of the house the owner was a different person under a private contract of sale of which the municipality had no knowledge.

The facts are stated in the opinion.

*Mr. F. González* for the appellant.

*Messrs. José E. Figueras, Fiscal,* and *F. Piñero* for the appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

José A. Berríos brought an action for damages against the municipality of Juncos. He alleged in the complaint that on and before January 8, 1919, he was the owner of frame house No. 10 on Muñoz Rivera Street of Juncos, and that on that date he petitioned the municipality for a permit to repair the said house and it was granted; that on the 4th of February, 1919, he obtained also the consent of the Insular Department of Health to make such repairs; that notwithstanding this and without giving him notice, his house was sold at public auction in compliance with a resolution of the Municipal Council of Juncos of February 13, 1919; that no court judgment had ordered the said sale, and that by reason thereof he suffered damages in the sum of $600.

The defendant municipality was represented by the district attorney who, in answer to the complaint, denied the material allegations thereof and alleged as a matter of defense

that Juana Ortiz de la Renta was the owner of the house in question and not the plaintiff. The plaintiff objected to the appearance of the defendant by the district attorney and the court overruled the objection. The case went to trial and judgment was finally rendered against the plaintiff. In its opinion the trial court said:

"It appears from the evidence that the house referred to in the complaint was in danger of falling and was a public nuisance. It was proved also that the said property belonged to Juana Ortiz de la Renta and that the municipality had no knowledge of its acquisition by the plaintiff: and as it appears also from the evidence that the municipality gave notice to Juana Ortiz de la Renta that it would proceed to demolish the said property, and there being no showing that the municipality acted in bad faith, the court decides that the complaint should be dismissed."

The plaintiff appealed from that judgment and alleged in his brief that the court erred as follows: 1. In permitting the intervention of the district attorney. 2. In applying section 396 of the Civil Code. 3. In holding that the house was a public nuisance. 4. In giving judgment contrary to law.

1. Let us examine the first assignment. The appellant maintains that section 51 of the Code of Civil Procedure prescribes that appearance in a district court shall be made through an attorney legally empowered to practice his profession, and that inasmuch as under the Act of March 9, 1905 (p. 123), entitled "An Act to prohibit the Fiscal of the Supreme Court, District Attorneys and Municipals Judges from Engaging in the Practice of Law," the said officials can act only as counsel for "The People of Porto Rico, or for any public officer," it is clear that the district attorney could not appear for one of the parties in this suit.

The purpose of the said Act of 1905 was to forbid district attorneys, who must be duly licensed attorneys, to engage in private practice. It is true that a municipality is

not The People of Porto Rico, nor a public officer, and, therefore, that under the law a district attorney is not bound to act as its counsel, but a municipality is a public corporation created by government for political purposes, or, as also defined, an incorporation of persons, inhabitants of a particular place, or connected with a particular district, enabling them to conduct its local civil government (2 Bouvier's Law Dictionary, p. 2269), and it is not contrary to the spirit of the law that a municipality should be represented by the district attorney in the interest of the public, without receiving payment therefor, if he can do so without neglecting his principal duties.

2. The other errors assigned may be discussed jointly and for that purpose it seems well to begin by summarizing the evidence examined at the trial.

The plaintiff's evidence consisted of three documents and his own testimony, and that of the defendant of a certincate and the testimony of two witnesses.

The first document offered by the plaintiff was a certified copy of the petition presented to the Municipal Council of Juncos for a permit to repair house No. 12 on Muñoz Rivera Street; the second, a certified copy of a resolution of the council granting the said permit, and the third, a permit from the Department of Health for repairing house No. 12 on Muñoz Rivera Street, Juncos.

The plaintiff testified in substance that he was the owner of house No. 10 by purchase from Juana Ortiz for the sum of $100 a few months prior to the 8th of January, 1919, without a written title; that the house was sold at auction by the municipality without his intervention and without any notice to him, and that he lost the $100 which he had paid, $300 or $400 for the estimated profits which he failed to obtain, and $200 which the usufruct of the lot was worth. The plaintiff admitted that when he bought the house "it

was vacant because the Health Department had ordered that it be vacated and closed."

The certificate offered by the defendant contains a copy of the resolution of the Municipal Council of Juncos approved by the mayor on November 14, 1917. It appears therefrom that the mayor addressed the council concerning the enforcement by the latter of the provisions of section 27 of a municipal ordinance of December 22, 1911, relative to the construction, reformation and repairing of buildings, stating that there were several houses in the town in ruins which had been closed by order of the Department of Health; that they disfigured the appearance of the town, were breeding places for microbes, refuges of vagabonds and a menace to the neighbors, and that their owners should be given a certain time within which to repair them. Based on the mayor's recommendation, the council resolved that in accordance with section 27 of the said ordinance "Marcial Blanco, Juana Ortiz, Modesto Martínez or the heirs of Agustín Collazo, Amalio Pereira and Domingo Matanzo be notified to proceed, within the peremptory period of two months from the date of notice of this resolution, to either demolish or repair their respective houses within this town which have been closed by the Department of Health, according to notice duly served by the health inspector, for which purpose they shall make the corresponding application to the council, accompanied by their respective plans, and if they fail to do so within the time allowed, the municipal authorities shall demolish or repair the said houses, as may be necessary in the opinion of the mayor, for the account and at the risk of the respective owner; provided, that if the owner of a house demolished by virtue of this resolution should for any reason be unable to rebuild it within the time fixed, the usufruct of the lot on which it stood shall be granted to any other person who may apply for it for the purpose of erecting a building

thereon, if the application be made in accordance with the provisions of the municipal ordinances relative to buildings."

Notice of the resolution was given to the house owners on December 13, 1917, Juana Ortiz being one of them.

Witness Varona said that "he knew house No. 10 on Muñoz Rivera Street, Juncos, which belonged to Juana Ortiz and was demolished by the municipality; that he is acquainted with Juana Ortiz de la Renta." The testimony of the other witness was fuller and was given by José Barreras, Mayor of Juncos in 1917 and Commissioner of Public Service at present, as follows:

He has known Juana Ortiz de la Renta for many years and in his opinion she has always had a house on Muñoz Rivera Street marked No. 10, which does not now exist; that the Municipal Council of Juncos adopted a resolution with regard to several houses which were in bad condition, giving their owners fifty days within which to rebuild or demolish them, and Juana Ortiz de la Renta did not comply with that resolution; that Juana Ortiz de la Renta was the owner of the house and signed the notice requiring her to rebuild; that the house was destroyed because it was in a ruinous condition and had been closed by the health authorities; that in his opinion the house was in a ruinous condition because it had been closed several years before by the Department of Sanitation and naturally a house so closed becomes a public menace and, besides, the house was not taken care of either by the owner or by a caretaker and it yielded nothing; it was abandoned. This house was situated on a hill and in a dangerous position. No house can be built on that lot because it is too small and the rains have washed the earth down to such an extent that the supporting beams of the house were exposed and of course the house was in danger of falling, as it was on a hillside, and at the foot of the hill there was a narrow street where there were some huts. The house was on a high and steep hill and below there are small houses on a street, and of course if the house fell it would roll down and injure the persons living in the huts below; that he honestly believes that it was necessary to destroy the house because the weather was ruining the house and the lot; that he has had experience as health inspector and physician; that the house in question had been closed for several years, and such houses, when not taken care of by anybody, become public

privies, and not only this particular one, which was on the outskirts of the town, but also others in the heart of the town, the doors of which had fallen, thus permitting the entrance of vagabonds who made a privy of the house; that that house was No. 10 and next to it is another house that is closed marked No. 12 and belonging to the heirs of Antonio Mujica; that he has always believed that house No. 10 belonged to Juana Ortiz; that Berríos did not notify the witness that he had purchased that house; that the house that was demolished was No. 10. On cross-examination by the plaintiff's attorney he testified that house No. 10 is bounded on the front by Muñoz Rivera Street, on the north by a house of the heirs of Antonio Mujica, on the south by other property whose owner he does not know, and on the back by the yard of the house of Juana Ortiz and the huts on the other street; that the house he has described belongs to Juana Ortiz; that he has been referring to the house that was demolished, the same house to which the documents exhibited by the attorney refer. On examination by the court he testified: That in the petition which the plaintiff addressed to the municipal authorities he asked for a permit to repair house No. 12; that house No. 12 is next to house No. 10 and is bounded on the north by a house whose owner he does not know, on the south by a house of Juana Ortiz de la Renta and on the west by lots of the municipality; that house No. 12 exists, but it has been closed for many years because it is in a ruinous condition; that this house also is going to be demolished; that it belongs to some heirs and as the testamentary proceedings were pending, there was really nobody with whom the matter could be taken up, but a similar course will be adopted.''

This was all of the evidence examined. The appellant strongly insists that his action is not based on the destruc tion of the house, but on its sale at public auction. The only reference to that sale was made in the plaintiff's own testimony. The evidence of the defendant all refers to the destruction of the house and the conflict was adjusted by the district court in favor of the defendant, and no error has been shown.

There is no dispute that the house demolished was house No. 10 Muñoz Rivera Street, Juncos, nor that the house belonged to Juana Ortiz. The plaintiff testified that he purchased it for $100 when it was already closed by the

health authorities and yielded nothing. And a reasonable interpretation of the evidence necessarily justifies the further conclusion that he purchased it after the expiration of the time granted the owner, accepted by her without objection, for repairing it, the notice warning her that if she did not do so the municipality would either repair or demolish the house for the account and at the risk of the owner.

Was the municipality empowered to adopt and enforce such a resolution? Could the resolution be enforced after the house had been sold by the owner, who had received notice, and without serving notice on the new owner?

Section 396 of the Civil Code reads as follows:

"Sec. 396.—When a building, wall, column or any other construction is in danger of falling, the owner shall be obliged to demolish it, or to do whatever is necessary to prevent its falling.

"Should the owner of the unstable thing fail to do so, it may be ordered demolished at his expense by the authorities."

This section is the same as section 389 of the old Civil Code. Citing as precedents the 3rd *Partida,* Title XXX, Law 15, and Book VII, Title XXXII, 2nd Law, of the *Novísima Recopilación,* Scaevola comments on that section as follows:

"The duty imposed by the second paragraph upon the authorities is one of the most important features of the so-called 'municipal police' and is also recognized by a judgment of the Supreme Court of June 15, 1877, and positively, among others, by Royal Orders of March 13, July 22 and December 18, 1880, which unanimously interpret the rule laid down in sections 72 and 73 of the municipal law, for subdivision 1 of the former provides that municipal corporations have exclusive charge of the establishment and maintenance of municipal services for repairing and preserving the good appearance of public streets, * * * *the safety of persons and property.* Within the meaning of this phrase, therefore, is undoubtedly included the obligation to which subdivision 2 refers. From these principles it may be inferred that the courts have no power to issue injunctions restraining the enforcement of

resolutions of municipal corporations which compel property owners to repair or demolish buildings in ruins because the said legal entities, acting either at the instance of neighbors threatened with damage, or spontaneously upon reports of architects, as will oftener be the case, will pass upon matters regarding which they alone are competent under the municipal law, in the absence of individual initiative.''

The laws establishing municipalities have been changed in this Island under the new sovereignty; but no part of these laws has been cited which prevents the municipalities from doing what they formerly were empowered to do in this matter.

The trial judge classifies the house in question as a public nuisance and this leads us to examine the case in the light of American jurisprudence.

According to the jurisprudence as summed up by Cyc., ''The term 'nuisance' means literally annoyance; anything which works hurt inconvenience or damage or which essentially interferes with the enjoyment of life or property.''

''A nuisance is public where it affects the rights enjoyed by citizens as part of the public, that is, the rights to which every citizen is entitled, whereas a private nuisance is anything done to the hurt, annoyance, or detriment of the lands, tenements, or hereditaments of another, and not amounting to a trespass; thus any unwarrantable, unreasonable, or unlawful use by a person of his own property, real or personal, to the injury of another constitutes a private nuisance. It will thus be observed that the difference between public and private nuisances does not depend upon the nature of the thing done but upon the question whether it affects the general public or merely some private individual or individuals, and so the same act or structure may be a public nuisance and also a private nuisance as to a person who is thereby caused a special injury other than that inflicted upon the general public; while on the other hand, the fact that a nuisance injures a great many persons does not make it a public nuisance, where the injury is to the individual property of each person and not to the general public as such.''    29 Cyc. 1152–53.

Cyc. cites a great number of instances where the courts have held a nuisance to be public, among them the following, which has some bearing on this case:

"A structure which is so used or has been allowed to become so ruined and dilapidated as to be dangerous to passers-by or to the public is a nuisance." *Id.* 1171.

According to the same, the legal remedies existing at present for the abatement of a nuisance are:

"The right to abate the nuisance without any legal process, a suit in equity for the abatement of or an injunction against the nuisance, an action at law for damages, or a criminal prosecution of the person responsible for the nuisance." 29 Cyc. 1214.

Further on, based always on the decisions of the courts, Cyc. says:

"A public nuisance may be summarily abated by the public authorities, but this power must be reasonably exercised, without doing unnecessary damage or injury to property, and is limited to a removal of that in which the nuisance consists. The right is derived from necessity, and the necessity must exist to justify its exercise. It has been held that the power of a municipal officer to abate a public nuisance without statutory or judicial process stands upon the same footing as the power of a citizen. The person responsible for a nuisance may be held liable for the expense of removing or abating it." *Id.* 1218.

From an analysis of the evidence examined in this case we are of the opinion that it actually shows the existence of a public nuisance.

The municipality did not act arbitrarily. It adopted a resolution expressing the grounds therefor and allowed the owners two months time. Notice of the resolution was duly given to the owner and she did nothing. The municipality thereupon was in a position to act and did act.

It developed that when the house was demolished the property had changed owners, but the municipality had no

knowledge of this. The petition made by the new owner is not sufficient to show that the municipality had notice. The number given to the house was different and that could have been misleading.

If the plaintiff were entitled to any relief, it would be for damages, provided the municipality profited by the de-struction of the house. The reasonable value of the house, after deducting the expense of demolishing it, might be the true measure of the damages. The evidence shows nothing in this regard. The plaintiff himself testified that he had paid only $100 for the house. The damages are estimated at more than $500 as we have seen. It might be said that this estimate was made in order to give the district court jurisdiction and with knowledge that if any damages existed they never exceeded $500. This is so clear, not only from the evidence, but also from the pleadings, that it might well be held that the action should have been dismissed for lack of jurisdiction.

Considering all that has been said, the judgment appealed from must be

*Affirmed.*

Justices Aldrey, Hutchison and Franco Soto concurred.

Mr. Justice Wolf took no part in the decision of this case.